UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**NANKO SHIPPING, USA**, *et al.*,  )
                                    )
        **Plaintiffs**,       )
                                    )
       v.                          )    Civil Action No. 14-1301 (RMC)
                                    )
**ALCOA, INC.**, *et al.*,          )
                                    )
        **Defendants.**       )
_____ )

## OPINION

      Plaintiffs Nanko Shipping USA, Nanko Shipping Guinea, and their President and sole shareholder, Mori Diane, brought this suit to enforce shipping rights as alleged third party beneficiaries who are entitled to contractual rights held by the Republic of Guinea. Alcoa, Inc. and Alcoa World Alumina LLC move to dismiss for failure to join an indispensable party, among other reasons. Plaintiffs failed to name the Republic of Guinea as a party, likely because it is entitled to sovereign immunity. Because the Republic of Guinea is indispensable, the case will be dismissed. Plaintiffs move to file a Second Amended Complaint, but the proposed filing would not survive a motion to dismiss and therefore the motion to amend will be denied as futile.

### I.  FACTS

      Because Plaintiffs contend that their proposed Second Amended Complaint overcomes the objections raised in Defendants' motion to dismiss, the Court analyzes the motion to dismiss in light of Plaintiffs' best attempt to state a claim, *i.e.* their proposed Second Amended Complaint (SAC). *See* Second Am. Compl. [Dkt. 14-1].

In 1963, the Republic of Guinea (Guinea) and Harvey Aluminum Company of Delaware (Halco)[1] executed the Compagnie des Bauxites de Guinee (CBG) Convention to develop bauxite mining and processing in Guinea.  SAC at 1-2; *see* Mot. to Dismiss [Dkt. 7], Ex. A (Convention) [Dkt. 7-2].  CBG is a corporation owned 49% by Guinea and 51% by Halco. SAC at 2 (introduction).  Article 9 of the Convention gave Guinea a qualified right to ship 50% of the bauxite produced:

> The Government [of Guinea] reserves the right, inasmuch as it does not adversely affect the sale of bauxite, to have the exported tonnage load[illegible] a proportion [of] which shall not exceed fifty percent on ships operating under the Guinean flag or an assimilated flag, or on ships chartered by the Government on the international shipping market, the above being, however, under the express condition that the freight tariffs practiced are lower or equal to those which are quoted at that particular time on the international shipping market for identical conditions for the freight and the shipping routes considered.

Convention, Art. 9; *see also* SAC ¶ 14.[2]  Over the past 50 years, CBG has produced and exported over 600 million tons of bauxite from Guinea; the bauxite has been used to produce approximately 150 million tons of aluminum valued at over $400 billion.  SAC ¶ 9.

---

[1] Harvey Aluminum Company of Delaware is now known as Halco Mining, Inc., a corporation organized under the laws of Delaware.  SAC ¶ 5.

[2] The proposed Second Amended Complaint alleges that Article 9 reads as follows:

> The government [of Guinea] reserves the right, to the extent that it doesn't have a negative impact on the sale of bauxite, to charge for the exported tonnage, to a maximum proportion of 50%, unto vessels flying the Guinean flag or similar or its chartered vessels on the international freight market, everything under the first condition [sic] that the freight rates be lower or equal to the current rates on the international freight market under equal conditions for the time period concerned for the freight and maritime relations in question.

SAC ¶ 14.

On August 17, 2011, Guinea entered into a Technical Assistance Agreement (TAA) with one of the Plaintiffs, Nanko Shipping Guinea (sometimes, NSG).[3] *Id*. ¶ 20. Under the terms of the TAA, Guinea allegedly authorized Nanko Shipping Guinea to exercise Guinea's shipping rights under Article 9 of the Convention thereby making Nanko Shipping Guinea a third party beneficiary to the Convention. *Id*. ¶¶ 3, 4, 20, 72. Nanko Shipping Guinea asserts a right to control CBG bauxite shipments for the benefit of the Guinean government and people. *Id*. ¶ 4.

Nanko Shipping USA owns 90% of the shares of Nanko Shipping Guinea and Mori Diane owns the remaining 10% of the shares. *Id*. ¶ 3. Nanko Shipping Guinea, Nanko Shipping USA, and Mr. Diane brought this suit against Alcoa, Inc. and its affiliate, Alcoa World Alumina LLC (collectively Alcoa Defendants), alleging that the Alcoa Defendants refused "to implement NSG's rights via the TAA, including the effectuation of shipping contracts . . . ." SAC ¶ 63; *see also* Am. Compl. [Dkt. 10-1] ¶ 63. Plaintiffs' Amended Complaint asserts two counts: Count I, breach of third party beneficiary contract; and Count II, race discrimination in contracting in violation of 42 U.S.C. § 1981. Am. Compl. ¶¶ 57-76. The Alcoa Defendants move to dismiss, arguing that they cannot be liable for breaching a contract—i.e. the Convention (which is the alleged source of Plaintiffs' third party rights)—when the Alcoa Defendants are not parties to the Convention. In response, Plaintiffs move to file a Second Amended Complaint, realleging Counts I and II and seeking to add Halco as a defendant (because Halco is a party to the Convention) and to add claims for conspiracy under 42 U.S.C. § 1985, tortious interference with contract and/or prospective business advantage, and civil conspiracy. SAC ¶¶ 69-104.

Plaintiffs essentially allege that the Alcoa Defendants are liable for breach of the Convention, although not signatories to the Convention, because the Alcoa Defendants are alter

---

[3] Neither party has filed a copy of the TAA.

egos to Halco. Plaintiffs contend that Halco is "essentially a conduit via which major corporate aluminum entities, such as Alcoa Defendants, by way of unknown legal instruments, own, control and manage Halco." *Id*. at 2 (introduction). Plaintiffs describe the business relationship between Alcoa Inc. and Halco as follows: "[a]t some point after or when the bauxite is shipped, upon purchase of bauxite from CBG, Halco simultaneously transfers ownership of the bauxite to its Consortium Members." *Id*. Plaintiffs define the "Consortium" as a group of three companies: Alcoa Inc. (a U.S. corporation), Rio Tinto (an Anglo-Australian company), and DADCO (a Swiss company). *Id*. ¶ 5. Together, Alcoa Inc. and Rio Tinto own a majority of the shares of Halco, and the three Consortium Members "comprise the Halco Board of Directors."[4] *Id*. ¶¶ 5-6. Plaintiffs allege that "Halco and Alcoa should be treated as a single entity, and alter ego liability should attach since the two businesses actually function as a single entity in many respects, and the notion that Halco is a parent is a fiction." *Id*. ¶ 6.

The Alcoa Defendants move to dismiss on numerous grounds, including lack of standing, failure to join an indispensable party, and failure to state a claim; Plaintiffs oppose. *See* Mot. to Dismiss [Dkt. 7]; Opp'n [Dkt. 11]; Reply [Dkt. 13]. Plaintiffs attempt to rescue their case through the filing of a Second Amended Complaint, and the Alcoa Defendants oppose on grounds of futility. *See* Mot. for Leave to File [Dkt. 14]; Opp'n [Dkt. 15]; Reply [Dkt. 17]. As described below, the case will be dismissed and the motion to amend will be denied.

---

[4] Some of Plaintiffs' allegations are vague and inconsistent. Plaintiffs fail to explain how three corporations can comprise the Halco board of directors, when boards of directors are composed of individuals. Plaintiffs also fail to explain how Alcoa and Halco can be alter ego corporations when Alcoa, Inc. is a minority shareholder in Halco. Because Plaintiffs have failed to join an indispensable party and have otherwise failed to state a claim, *see infra*, the fact that Plaintiffs' allegations are vague and inconsistent is immaterial to this Opinion.

## II. LEGAL STANDARDS

### A. Motion to Dismiss For Lack of Jurisdiction

A motion to dismiss based on lack of standing to sue as a legal entity is governed by Federal Rule of Civil Procedure 12(b)(1). When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F. 3d 1196, 1199 (D.C. Cir. 2004). Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). To determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

### B. Motion to Dismiss for Failure to Join Indispensable Party

Federal Rule of Civil Procedure 12(b)(7) permits dismissal of a complaint for failure to join a party under Rule 19. In evaluating the need for an absent party, a court must accept as true the allegations set forth in the complaint and may consider extrinsic evidence submitted by the parties without converting a motion to dismiss to one for summary judgment. *16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.*, 276 F.R.D. 8, 12 (D.D.C. 2011). The burden is on the moving party to demonstrate "the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citadel Inv. Grp., LLC v. Citadel Capital Co.*, 699 F. Supp. 2d 303, 317 (D.D.C. 2010).

### C. Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Id*. at 570. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Id*. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III. ANALYSIS

### A. Standing

To have Article III standing, a plaintiff must establish: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To assert standing for

breach of contract, an individual shareholder must identify his own legal interest that has been directly or independently harmed, not an interest derived from an injury to the corporation. *Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 109 (D.D.C. 2010).

Plaintiffs Nanko Shipping Guinea, Nanko Shipping USA, and Mr. Diane claim that the TAA made them third party beneficiaries to the Convention and they claim to have suffered from a breach of contract as such third party beneficiaries. Only Nanko Shipping Guinea is a party to the TAA and thus only Nanko Shipping Guinea can assert a viable claim that it is a third party beneficiary to the Convention. Its shareholders, Mr. Diane and Nanko Shipping USA, have not asserted any personal rights under the TAA or the Convention, and they have not asserted any direct or independent harm to themselves. *See Cheeks*, 722 F. Supp. 2d at 109. They have no standing to bring the third party breach of contract claim. *See Friends of the Earth*, 528 U.S. at 180-81.

Mr. Diane and Nanko Shipping USA also lack standing to bring the claim for race discrimination in violation of 42 U.S.C. § 1981. These two plaintiffs allege that Nanko Shipping Guinea is a Black-owned company, that Mr. Diane is a Black American, and that the Alcoa Defendants and Halco intentionally impaired Nanko Shipping Guinea's contractual rights under the TAA due to race discrimination. Am. Compl. ¶¶ 64-76 (allegations against Alcoa Defendants); SAC ¶¶ 77-91 (allegations against Alcoa Defendants and Halco). Section 1981 protects the equal right of all persons to make and enforce contracts without respect to race. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006). Any claim brought under § 1981 must identify an impaired contractual relationship under which the plaintiff has rights. *Id*. at 476. That is, to assert a claim that a defendant discriminatorily failed to enforce a contract in violation of § 1981, a plaintiff must allege that he has rights under an existing contract that he

wishes to enforce.[5] *Id*. at 479-80. "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id*. at 480. Mr. Diane and Nanko Shipping USA have not alleged injuries flowing from a breach of their own contractual relationships, they have only alleged injuries to Nanko Shipping Guinea due to breach of Nanko Shipping Guinea's third party rights under the Convention. Because they have not identified an injury in fact to their own contractual interests, Nanko Shipping USA and Mr. Diane will be dismissed as parties here for lack of standing.

### B. Failure to Join an Indispensable Party

Federal Rule of Civil Procedure 19(a) describes required persons who must be joined as a party in a lawsuit:

> (a) Persons Required to Be Joined if Feasible
>
> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

---

[5] In addition to protecting the right to enforce contracts, § 1981 also protects the right to "make" contracts. *See* 42 U.S.C. § 1981. To assert a claim for discrimination in making a contract under § 1981, a plaintiff must identify a proposed contract under which he would have had rights if the discrimination had not occurred. *Domino's Pizza*, 546 U.S. at 479-80.

> (2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Nanko Shipping Guinea asserts breach of its rights as a third party beneficiary—claiming that, under the terms of the TAA, it is entitled to exercise Guinea's rights under the CBG Convention. If this Court were to resolve the issue of breach, the Court would have to interpret the meaning of Article 9 and the parameters of Guinea's rights and duties under the Convention. The Court's interpretation of the Convention may impair or impede Guinea's right to protect its interests under the Convention. Under Rule 19, Guinea is a necessary party to this suit.

Guinea, however, cannot be joined because it is entitled to sovereign immunity. The Foreign Sovereign Immunities Act provides:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 and 1607.

28 U.S.C. § 1604. The exceptions do not apply here.[6]

Under Rule 19(b) "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The factors for a court's consideration include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

---

[6] Plaintiffs do not contest the assertion that Guinea is protected from suit by sovereign immunity. Opp'n [Dkt. 11] at 25 ("Defendants may be correct . . . that this Court lacks jurisdiction over Guinea . . . .").

>   (2) the extent to which any prejudice could be lessened or avoided by:
>
>   >   (A) protective provisions in the judgment;
>   >
>   >   (B) shaping the relief; or
>   >
>   >   (C) other measures;
>
>   (3) whether a judgment rendered in the person's absence would be adequate; and
>
>   (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

The Republic of Guinea could be prejudiced if this case were to move forward. Guinea's important and highly valuable contract rights could be impaired or impeded by the Court's ruling on the third party breach of contract claim as well as the § 1981 claim for enforcement of the contract. Further, Nanko Shipping Guinea has an adequate remedy without proceeding in this Court, as it can assert its rights in arbitration. If Nanko Shipping Guinea in fact is entitled to exercise Guinea's rights under the Convention, it is also bound by the other terms of the Convention, including the arbitration clause. The Convention requires that all disputes that are connected to the Convention shall be arbitrated.[7] *See* Convention, Art. 13 ("Conciliation and arbitration shall apply . . . to all disputes which in any way are connected with this Agreement and with any legal instruments and legal relationships which might be a consequence thereof . . ."). The Court cannot in equity and good conscience proceed among the existing parties, and thus this case will be dismissed for failure to join an indispensable party.

---

[7] Even if Guinea were joined as a party here, the case would have to be dismissed so that the parties could proceed to mandatory arbitration.

### C. Motion for Leave to Amend

As explained above, Nanko Shipping Guinea seeks to file the Second Amended Complaint, to add Halco as a defendant and to add claims for conspiracy under 42 U.S.C. § 1985, tortious interference with contract and/or prospective business advantage, and civil conspiracy. SAC ¶¶ 69-104. Federal Rule of Civil Procedure 15(a) provides that leave should be freely granted when justice so requires. However, a motion to amend should be denied if amendment is futile because the proposed claim would not survive a motion to dismiss. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

The joinder of Halco and the allegations that Alcoa Inc. and Halco are alter egos does not save the third party breach of contract claim or the related § 1981 claim because Guinea is a necessary party here and cannot be joined because it enjoys sovereign immunity. *See* Fed. R. Civ. P. 19; 28 U.S.C. § 1604.

Further, the additional proposed claims—violation of 42 U.S.C. § 1985, tortious interference with contract and/or prospective business advantage, and civil conspiracy—would not survive a motion to dismiss. Section 1985 of Title 42 does not create any substantive rights, but only permits a private cause of action to sue for conspiracy to violate a federal right. *Weaver v. Gross*, 605 F. Supp. 210, 213 n.5 (D.D.C. 1985) (citing *United Bhd. of Carpenters & Joiners*, 463 U.S. 825, 833 (1983)). Here, Plaintiffs assert a claim under § 1985, as part of Count II which alleges violation of § 1981. Because the § 1981 claim will be dismissed, the § 1985 claim also fails. *See, e.g.*, *Wesley v. Howard Univ.*, 3 F. Supp. 2d 1, 3 (D.D.C. 1998) (dismissing § 1985 claims because plaintiff failed to state a § 1981 claim).

Plaintiffs also seek to add a claim for tortious interference with contract and/or prospective business advantage/expectancy. The elements of a claim for tortious interference

with contract or business expectancy are: (1) the existence of a valid contract/business expectancy; (2) knowledge of the contract/expectancy on the part of the interferor; (3) intentional interference causing termination of the contract or relationship or causing a failure of performance by one of the parties; and (4) resultant damage. *Onyeoziri v. Spivok*, 44 A.3d 279, 286 (D.C. 2012) (describing a claim for tortious interference with contract under D.C. law); *McNamara v. Picken*, 866 F. Supp. 2d 10, 15 (D.D.C. 2012) (describing a claim for interference with business expectancy under D.C. law).

The third element of the claim—intentional interference causing termination of the contract or relationship or causing a failure of performance by one of the parties—requires that a plaintiff plead and make a "strong showing of intent to disrupt ongoing business relationship," *see Bell v. Ivory*, 966 F. Supp. 23, 31 (D.D.C. 1997), and "affirmative, intentional acts of interference," *see Benedict v. Allen*, No. 00-1023(CKK), 2001 U.S. Dist. LEXIS 26293, at * 21-23 (D.D.C. June 13, 2001). Mere refusal to deal is insufficient. Restatement (Second) of Torts § 766 cmt. b; *Bill Call Ford, Inc. v. Ford Motor Co.*, 830 F. Supp. 1053, 1064 (N.D. Ohio 1993). Plaintiffs' tortious interference claim rests on alleged inaction. Plaintiffs allege that the Alcoa Defendants "interfered with CBG [Convention] related shipping transactions (Nanko's related Article 9 rights) per the TAA. Defendants refused to recognize [Nanko Shipping Guinea's] rights as stated in the TAA, and further refused to execute any shipping contracts related thereto." SAC ¶ 95; *see also id*. ¶ 28 (Defendants interfered with the TAA and Plaintiffs' business expectancy by their "refusal to provide Nanko shipping contract controls and awards as per the CBG [Convention]"); *id*. ¶ 61 (Defendants "refused . . . to respect, implement, support, or ensure the effectuation of the TAA). Allegations of inaction do not satisfy the requirement that a plaintiff plead affirmative, intentional acts of interference. *See Benedict*, 2001 U.S. Dist. LEXIS

26293, at * 21-23.  It would be futile to permit the addition of the claim for tortious interference; the allegations fail to state a claim and would not survive a motion to dismiss.

Finally, Plaintiffs seek to add a civil conspiracy claim.  A civil conspiracy is not an independent claim, but instead is a means for establishing vicarious liability for an underlying tort.  *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983).   If the underlying tort claim fails, a conspiracy claim based on such tort also fails.  *See id*.  Because Plaintiffs' tortious interference claim would not survive a motion to dismiss, their civil conspiracy claim based on the tortious interference claim would not survive.  Accordingly, it would be futile to permit the addition of the civil conspiracy claim.

In sum, Plaintiffs' motion to file a Second Amended Complaint will be denied because to permit its filing would be futile since it would not survive a motion to dismiss.

### IV. CONCLUSION

For the reasons stated above, the Alcoa Defendants' motion to dismiss [Dkt. 7] will be granted, Plaintiffs' motion to file a second amended complaint [Dkt. 14] will be denied, and this case will be dismissed.  A memorializing Order accompanies this Opinion.

Date:  June 5, 2015                                     /s/
                                                         ROSEMARY M. COLLYER
                                                         United States District Judge