UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **NANKO SHIPPING, USA**, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 14-1301 (RMC) |
| **ALCOA, INC.**, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**OPINION**

Nanko Shipping Guinea seeks reconsideration of the dismissal of this case. It does not assert new evidence or a change in law, but argues that the Court committed clear error and that reversal is required to avoid manifest injustice. Because there was no error or injustice, the motion will be denied.

**I. FACTS[1]**

In 1963, the Republic of Guinea (Guinea) and Harvey Aluminum Company of Delaware (Halco) formed the Compagnie des Bauxites de Guinee (CBG) and entered into the CBG Convention, a contract for the development of bauxite mining, processing, and shipping in Guinea. Second Am. Compl. [Dkt. 14-1] (SAC) at 1-2; *see* Mot. to Dismiss [Dkt. 7], Ex. A (Convention) [Dkt. 7-2].[2] Article 9 of the Convention gave Guinea a qualified right to ship 50% of the bauxite produced by CBG:

> The Government [of Guinea] reserves the right, inasmuch as it does not adversely affect the sale of bauxite, to have the exported tonnage load[illegible] a proportion [of] which shall not exceed fifty percent

---

[1] More detailed facts are set forth in the June 5, 2015 Opinion. *See* Op. [Dkt. 22].

[2] CBG is a corporation owned 49% by Guinea and 51% by Halco. SAC at 2 (introduction).

1

> on ships operating under the Guinean flag or an assimilated flag, or on ships chartered by the Government on the international shipping market, the above being, however, under the express condition that the freight tariffs practiced are lower or equal to those which are quoted at that particular time on the international shipping market for identical conditions for the freight and the shipping routes considered.

Convention, Art. 9.

Decades later, in 2011, Guinea entered into a Technical Assistance Agreement with Nanko Shipping Guinea. Under the terms of the Technical Assistance Agreement, Guinea allegedly authorized Nanko Shipping Guinea to exercise Guinea's shipping rights under Article 9 of the Convention.[3] SAC ¶¶ 3, 4, 20, 72. Nanko Shipping Guinea contends that the Technical Assistance Agreement made Nanko Shipping Guinea a third party beneficiary to the Convention. *Id.*

Nanko Shipping Guinea is owned by Nanko Shipping USA and Mori Diane. *Id.* ¶ 3. Mr. Diane is President and sole shareholder of both Nanko Shipping Guinea and Nanko Shipping USA. *Id.* Nanko Shipping Guinea, Nanko Shipping USA, and Mr. Diane (collectively, Plaintiffs) brought this suit against Alcoa, Inc. and its affiliate, Alcoa World Alumina LLC (collectively, Alcoa), alleging that Alcoa refused to implement and effectuate Nanko Shipping Guinea's shipping rights. *Id.* ¶ 63; Am. Compl. [Dkt. 10-1] ¶ 63.[4] Plaintiffs alleged that (1) Alcoa breached Plaintiffs' third party beneficiary rights and (2) Alcoa discriminated against Plaintiffs based on Mr. Diane's race in violation of 42 U.S.C. § 1981, which prohibits race

---

[3] Neither party has filed a copy of the Technical Assistance Agreement.

[4] Because Plaintiffs argued that their proposed Second Amended Complaint overcame the deficiencies identified in Alcoa's motion to dismiss the Amended Complaint, the Court focused on the Second Amended Complaint as Plaintiffs' best attempt to state a claim. *See* Op. [Dkt. 22] at 1.

2

discrimination in contracting. Mr. Diane is a Black American and Nanko Shipping Guinea is a Black-owned company. SAC ¶¶ 77-91; Am. Compl. ¶¶ 64-76.

Alcoa moved to dismiss, primarily because it cannot be liable for breaching the Convention (the source of Nanko Shipping Guinea's third party rights) when it was not a party to the Convention. In response, Plaintiffs asserted that Alcoa is the alter ego of Halco, a party to the Convention, and Plaintiffs sought to file a Second Amended Complaint to add Halco as a defendant. Plaintiffs also sought to add, among other claims, a claim for conspiracy to discriminate under 42 U.S.C. § 1985.

The Court denied the motion to amend the complaint as futile and dismissed the case, finding that Nanko Shipping USA and Mr. Diane lacked standing and that Plaintiff had failed to join an indispensable party, the Republic of Guinea. *See* Op. at 6-10. The Court explained that (1) Nanko Shipping Guinea's claim for breach of third party beneficiary rights under the Technical Assistance Agreement was a claim to enforce Guinea's right to ship bauxite under the Convention, and (2) Nanko Shipping Guinea's § 1981 claim that Alcoa and Halco discriminatorily failed to enforce the Technical Assistance Agreement was a claim to enforce Guinea's rights under the Convention because the Technical Assistance Agreement conveyed shipping rights derived from and defined by the Convention. *Id*. at 9-10. To resolve this case on the merits, the Court would have been required to construe the Convention and the parameters of Guinea's rights and duties under the Convention. Because the Court's interpretation of the Convention could impair or impede Guinea's right to protect its interests under the Convention, Guinea was a necessary and indispensable party to this suit. Upon deciding that the Republic of Guinea was a necessary party that could not be joined due to its sovereign immunity, *see* 28 U.S.C. § 1604, the Court decided that it could not "in equity and good conscience" proceed

among the existing parties, s*ee* Fed. R. Civ. P. 19(b), and the case was dismissed.  *See* Fed. R. Civ. P. 12(b)(7) (permitting dismissal for failure to join an indispensable party).  In so deciding, it emphasized that Nanko Shipping Guinea has an adequate remedy for resolution of its claims— through arbitration mandated by the Convention.  Op. at 10.

Because the § 1981 claim was dismissed, the § 1985 claim that was based on the § 1981 claim also was dismissed.  Op. at 11.  Section 1985 permits a private cause of action for conspiracy to violate a federal right, but it does not itself create any substantive rights.  *Weaver v. Gross*, 605 F. Supp. 210, 213 n.5 (D.D.C. 1985) (citing *United Bhd. of Carpenters & Joiners*, 463 U.S. 825, 833 (1983)).  Nanko Shipping Guinea's § 1985 claim was a claim for conspiracy to violate § 1981.  When the § 1981 claim was dismissed, the derivative § 1985 claim also had to be dismissed.

Nanko Shipping Guinea seeks reconsideration and reinstatement of the §§ 1981 and 1985 claims.  *See* Mot. for Recons. [Dkt. 25]; Reply [Dkt. 30].  Alcoa opposes.  *See* Opp'n [Dkt. 29].

## II. LEGAL STANDARD

Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e).  They are discretionary and need not be granted unless the court finds that there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).  The motion is not "simply an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995).  Nor is it an avenue for a "losing party . . . to raise new issues that could have been raised previously." *Kattan v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993).

Nanko Shipping Guinea does not base its motion on new evidence or a change in law. Instead, Nanko Shipping Guinea argues that the Court committed clear error and that reversal is required to avoid manifest injustice. Manifest injustice is an exceptionally narrow concept. *See Slate v. ABC*, 12 F. Supp. 3d 30, 34 (D.D.C. 2013). It must entail more than just a clear and certain prejudice to the moving party and must entail a result that is fundamentally unfair in light of governing law. *Id*. at 35-36. A "final judgment must be 'dead wrong' to constitute clear error." *Lardner v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

### III. ANALYSIS

Nanko Shipping Guinea asserts that the "court's erroneous interpretation of applicable law creates manifest injustice," *see* Mot. for Recons. at 3, and the asserted "erroneous interpretation" is the Court's finding that Guinea is an indispensable party. Nanko Shipping Guinea argues that Guinea is not required as a party in this case and that the Court cannot make a determination about Guinea's indispensability without discovery. Nanko Shipping Guinea does not present any new arguments or evidence to support its argument that Guinea is not an indispensable party. As the Court held previously, Nanko Shipping Guinea's claims would require the Court to interpret the Convention, which might impair or impede Guinea's rights, making Guinea an indispensable party. Discovery would not change this.

Nanko Shipping Guinea also contends that the Court can avoid the indispensable party analysis altogether if it looks no further than the Technical Assistance Agreement. But it is not possible to resolve any question regarding the nature and extent of Nanko Shipping Guinea's rights under the Technical Assistance Agreement without analyzing the Convention from which such rights flowed. The Technical Assistance Agreement passed Guinea's rights under the Convention to Nanko Shipping Guinea. The *Convention* is the source of Guinea's rights, a fact

recognized by Nanko Shipping Guinea when it asserts that the Technical Assistance Agreement gave Nanko Shipping Guinea third party beneficiary rights under the Convention. *See* SAC ¶¶ 3, 4, 20, 72. To decide whether Nanko Shipping Guinea has third party rights, and to determine the nature and extent of these rights, necessitates an examination of the Convention to determine the nature and scope of the Guinea's shipping rights the first place. Similarly, to determine whether Defendants discriminated against Nanko Shipping Guinea in violation of § 1981 by refusing to implement Nanko Shipping Guinea's shipping rights compels an analysis of the Convention to determine what the shipping rights are.

Nanko Shipping Guinea further complains that the Court noted that Nanko Shipping Guinea has an alternative remedy, in that it could proceed to arbitration. Op. at 10 & n.7. The Convention requires that disputes relating to it be arbitrated. *See* Convention, Art. 13 ("Conciliation and arbitration shall apply . . . to all disputes which in any way are connected with this Agreement and with any legal instruments and legal relationships which might be a consequence thereof . . .").[5] Nanko Shipping Guinea contends that it cannot be forced to arbitrate because it did not expressly agree to the terms of the Convention. Whether arbitration is mandatory for Nanko Shipping Guinea or not is beside the point. The case was dismissed because Guinea is a necessary and indispensable party to a resolution of Nanko Shipping Guinea's claims, and the Court could not in equity and good conscience proceed among the existing parties—particularly when Nanko Shipping Guinea has an adequate remedy in arbitration. *See* Op. at 9-10.

---

[5] The interpretation of an unambiguous contract is a question of law for the court. *U.S. On Behalf of Dep't of Labor v. Ins. Co. of N. Am.*, 131 F.3d 1037, 1042 (D.C. Cir. 1997). The arbitration clause is unambiguous.

In addition to dismissing the case for failure to join an indispensable party, the Court also dismissed the § 1981 claim for failure to state a claim. In its motion for reconsideration, Nanko Shipping Guinea insists that its allegation that Alcoa discriminated against Nanko Shipping Guinea based on race was sufficient. However, § 1981 "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). It does not cover unintentional disparate treatment. *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 n.1 (D.C. Cir. 2013). To plead intentional discrimination, "plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief. Rather, plaintiff must allege some facts that demonstrate that race was the reason for defendant's actions." *Bray v. RHT, Inc.,* 748 F. Supp. 3, 5 (D.D.C. 1990); *see also Mesumbe v. Howard Univ.*, 706 F. Supp. 2d 86, 92 (D.D.C. 2010). In *Mesumbe*, the court dismissed a § 1981 claim for failure to plead intentional discrimination, where the plaintiff alleged only that he was African and that similarly situated students of different ethnic backgrounds were treated better. 706 F. Supp. 2d at 92. Nanko Shipping Guinea has not alleged any facts to support its claim that Alcoa intentionally discriminated against Nanko Shipping Guinea due to race. Because Nanko Shipping Guinea failed to allege an actionable claim under § 1981, the claim was dismissed. Further, because the § 1981 claim was the linchpin for the § 1985 claim, the failure to state a claim under § 1981 also meant that Nanko Shipping Guinea failed to state a claim for conspiracy under § 1985. Both claims were dismissed properly under Federal Rule of Civil Procedure 12(b)(6).

## IV. CONCLUSION

Nanko Shipping Guinea has not pointed to new evidence or any change in the law, and it has not demonstrated clear error or manifest injustice. Accordingly, Nanko Shipping

Guinea's motion for reconsideration [Dkt. 25] will be denied. A memorializing Order accompanies this Opinion.

Date: August 6, 2015                                                /s/
                                                        ROSEMARY M. COLLYER
                                                        United States District Judge