UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NANKO SHIPPING, GUINEA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 14-1301 (RMC) |
| ALCOA, INC., *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Nanko Shipping, Guinea brought this suit to enforce shipping rights as an alleged third-party beneficiary of certain contractual rights held by the Republic of Guinea. Defendants Alcoa, Inc., Alcoa World Alumina LLC, and Harvey Aluminum Company of Delaware move to dismiss; they argue that all claims are subject to mandatory arbitration and that Nanko Shipping has failed to state a claim on which relief may be granted. The Court finds that Nanko Shipping is not subject to the arbitration provision in the contract between the Republic of Guinea and Harvey Aluminum Company and, therefore, its contract claims are properly brought in court. As a result, Nanko Shipping may complain of racial discrimination under 42 U.S.C. §§ 1981 and 1985. However, Nanko Shipping's claims for tortious interference with contract and civil conspiracy will be dismissed for failure to state a claim.

**I. FACTS**

In 1963, the Republic of Guinea (Guinea) and Harvey Aluminum Company of Delaware (Halco)[1] executed the Compagnie des Bauxites de Guinée Convention to develop

---

[1] Harvey Aluminum Company of Delaware is now known as Halco Mining, Inc., a corporation organized under the laws of Delaware. Third Am. Compl. (TAC) [Dkt. 35] ¶ 1.

1

bauxite mining and processing in Guinea. Third Am. Compl. (TAC) [Dkt. 35] ¶ 1; *see also* Ex. A, Halco Mot. to Dismiss, Agreement Between The Republic of Guinea and Harvey Aluminum Co. (CBG Convention) [Dkt. 47-2].[2] The Compagnie des Bauxites de Guinee (the Bauxite Company of Guinea) (CBG or Corporation) is a corporation owned 49% by Guinea and 51% by Halco. TAC ¶ 1. Article 9 of the CBG Convention gave Guinea a qualified right to ship 50% of the bauxite produced:

> The Government [of Guinea] reserves the right, inasmuch as it does not adversely affect the sale of bauxite, to have the exported tonnage load[illegible] a proportion [of] which shall not exceed fifty percent on ships operating under [illegible] Guinean flag or an assimilated flag, or on ships chartered by the Government on the international shipping market, the above being, however, under the express condition that the freight tariffs practiced are lower or equal to those which are quoted at that particular time on the international shipping market for identical conditions for the freight and the shipping routes considered.

CBG Convention, Art. 9 at 33-34; *see also* TAC ¶¶ 1, 19.[3] Over the past 50 years, the Corporation has produced and exported over 600 million tons of bauxite from Guinea; the

---

[2] All citations to the CBG Convention are to the electronic case filing (ECF) page number.

[3] The Third Amended Complaint alleges that Article 9 reads as follows:

> The government [of Guinea] reserves the right, to the extent that it doesn't have a negative impact on the sale of bauxite, to charge for the exported tonnage, to a maximum proportion of 50%, unto vessels flying the Guinean flag or similar or its chartered vessels on the international freight market, everything under the first condition [sic] that the freight rates be lower or equal to the current rates on the international freight market under equal conditions for the time period concerned for the freight and maritime relations in question.

TAC ¶ 19. Because the actual CBG Convention is incorporated by reference in the Third Amended Complaint, the Court will refer to Article 9 as it appears in the CBG Convention itself.

bauxite has been used to produce approximately 150 million tons of aluminum valued at over $400 billion. TAC ¶ 14.

On August 17, 2011, Guinea entered into a Technical Assistance Agreement (TAA) with Nanko Shipping, Guinea (Nanko Shipping). *Id.* ¶ 25; *see also* Ex. 1, TAC, Technical Assistance Agreement [Dkt. 35-1]. Under the terms of the Technical Assistance Agreement, Guinea authorized Nanko Shipping to exercise Guinea's shipping rights under Article 9 of the CBG Convention, thereby making Nanko Shipping a third-party beneficiary to the CBG Convention. TAC ¶¶ 3, 4, 25, 77. In this lawsuit, Nanko Shipping asserts a right to control bauxite shipments from Guinea for the benefit of the Guinean government and people. *Id.* ¶ 4.

Nanko Shipping, Nanko Shipping USA, and owner Mori Diane originally brought this suit against Alcoa, Inc. and its affiliate, Alcoa World Alumina, LLC (collectively Alcoa Defendants). *See* Compl. [Dkt. 1]. This Court dismissed Nanko Shipping USA and Mr. Diane for lack of standing and that holding was not appealed. *See Nanko Shipping, USA v. Alcoa, Inc.*, 107 F. Supp. 3d 174, 179-80 (D.D.C. 2015) (*Nanko Shipping I*); *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 462 (D.C. Cir. 2017) (*Nanko Shipping II*). The Court also dismissed all claims brought by Nanko Shipping for failure to join a necessary party, the Republic of Guinea, and, in the alternative, dismissed Nanko Shipping's § 1981, tortious interference, and civil conspiracy claims for failure to state a claim upon which relief may be granted. *See Nanko Shipping I*, 107 F. Supp. 3d at 182-83. On appeal, the United States Court of Appeals for the District of Columbia Circuit held that the Republic of Guinea is not an indispensable party to this suit and that Nanko Shipping had adequately alleged a § 1981 claim; it otherwise sustained this Court's initial decision. *See Nanko Shipping II*, 850 F.3d at 467.

On remand, Nanko Shipping filed a Third Amended Complaint adding Defendant Halco to the Alcoa Defendants and advancing four counts:

> Count I: Breach of Third-Party Beneficiary Contract (against Halco);
>
> Count II: Race Discrimination in Violation of 42 U.S.C. §§ 1981 and 1985 (against all Defendants);
>
> Count III: Tortious Interference with Business/Contractual Relations and/or Prospective Advantage (against all Defendants); and
>
> Count IV: Civil Conspiracy (against all Defendants).

TAC ¶¶ 74-109. The Alcoa Defendants move to dismiss, arguing that the CBG Convention requires all claims to be submitted to arbitration and, in the alternative, the tortious interference and civil conspiracy claims fail because Nanko Shipping failed to allege affirmative and intentional interference by Alcoa. Halco moves to dismiss as well; it argues that (1) the CBG Convention requires arbitration; (2) Nanko Shipping failed to allege any duty under the CBG Convention that Halco may have breached, so its breach of contract and §§ 1981 and 1985 claims must fail; and (3) the Third Amended Complaint fails adequately to plead claims of tortious interference and civil conspiracy. After Nanko Shipping opposed the motions, both Defendants replied. The motions are ripe for review.[4]

---

[4] *See* The Alcoa Defs.' Mot. to Dismiss Pl.'s Third Am. Compl. for Damages (Alcoa Mot.) [Dkt. 46]; Mem. of P. & A. in Supp. of the Alcoa Defs.' Mot. to Dismiss Pl.'s Third Am. Compl. for Damages (Alcoa Mem.) [Dkt. 46-1]; Mot. of Def. Halco to Dismiss Third Am. Compl. (Halco Mot.) [Dkt. 47]; Mem. of P. & A. in Supp. of Mot. to Dismiss Pl.'s Third Am. Compl. (Halco Mem.) [Dkt. 47-1]; Pl.'s Opp'n to Defs.' Mots. to Dismiss the Third Am. Compl. (Opp'n) [Dkt. 50]; Reply Br. in Supp. of Mot. to Dismiss Pl.'s Third Am. Compl. (Halco Reply) [Dkt. 51]; Reply Br. in Supp. of the Alcoa Defs.' Mot. to Dismiss Pl.'s Third Am. Compl. for Damages (Alcoa Reply) [Dkt. 52].

4

## II. LEGAL STANDARDS

### A. Federal Arbitration Act

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, was passed by Congress "to establish an alternative to the complications of litigation." *Revere Copper & Brass Inc. v. Overseas Private Inv. Corp.*, 628 F.2d 81, 83 (D.C. Cir. 1980). The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When arbitration clauses arise in the context of international agreements, a court applies Chapter Two of the FAA, which codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (New York Convention); *see also* 9 U.S.C. §§ 201-208. The FAA declares that "[a]n action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States. The district courts . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203. The New York Convention itself obligates contracting nations to "recognize [foreign] arbitral awards as binding and enforce them in accordance with" local procedural law. New York Convention, Art. III. As a party to the New York Convention, the United States has reserved the right to recognize and enforce only those awards made "in the territory of another Contracting State," *i.e.*, a signatory foreign nation. *Id*. Art. I(3) (allowing such reservations).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 241 (1962) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S.

574, 582 (1960)). "[A]rbitration is simply a matter of contract between the parties." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). When a party seeks arbitration that another party opposes, the question arises whether a court or an arbitrator decides whether the dispute is arbitrable. The answer depends on whether the parties agreed to submit that opening question to an arbitrator; if so, a court defers to the arbitrator but if not, the court decides that question independently. *Id.* at 943-44. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944. In this analysis, however, courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

The Second Circuit utilizes a four-part test when deciding whether the New York Convention and FAA apply to a dispute: (1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the New York Convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope. *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146 (2d Cir. 2001). This analysis has been generally followed in this district. *See, e.g.*, *Diag Human S.E. v. Czech Rep.-Ministry of Health*, No. 13-355, 2014 WL 3956747, at *4 (D.D.C. Aug. 14, 2014); *Nanosolutions, LLC v. Prajza*, 793 F. Supp. 2d 46, 53 (D.D.C. 2011); *Invista North Am. S.À.R.L. v. Rhodia Polyamide Intermediates S.A.S.*, 503 F. Supp. 2d 195, 201 (D.D.C. 2007); *Khan v. Parsons Glob. Servs. Ltd.*, 480 F. Supp. 2d 327, 339 (D.D.C. 2007).

### B. Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Id*. at 570. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Id.* at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III. ANALYSIS

#### A. Has Nanko Shipping Agreed to Arbitrate?

Nanko Shipping does not dispute the applicability of the FAA and the Court finds that the New York Convention and the FAA apply because there is a written agreement; the written agreement provides for arbitration in Switzerland, a signatory to the New York

Convention; the disagreement arises out of a commercial relationship; and the dispute is not entirely domestic.

Alcoa and Halco argue that Nanko Shipping is bound by the arbitration clause in the CBG Convention. They reason that because Nanko Shipping asserts that it sits in the shoes of Guinea and is entitled to Guinea's rights under the CBG Convention, it is also subject to the requirements of the CBG Convention. Under Defendants' theory, if Nanko Shipping wishes to benefit from some terms of the CBG Convention, it must be bound by the remaining terms of the document, including mandatory arbitration of disputes. Defendants also contend that successors-in-interest and assigns, such as Nanko Shipping asserts itself to be, are bound by contractual arbitration clauses agreed to by the original signatory. *See* Alcoa Mem. at 12 n.5; *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("'[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'") (quoting 21 R. Lord, Williston on Contracts § 57:19 (4th ed. 2001)); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Riggs Nat'l Bank of Washington, D.C.*, 5 F.3d 554, 556 (D.C. Cir. 1993) ("District of Columbia law establishes the general rule that all claims are freely assignable, and permits the assignee to stand in the same position as the assignor."); *Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs. Ltd.*, 902 F. Supp. 2d 87, 97 (D.D.C. 2012) ("A nonsignatory to an arbitration agreement may be bound by that agreement under traditional principles of contract and agency law. . . . The theories for binding nonsignatories to arbitration agreements include incorporation by reference, assumption, agency, veil piercing/alter ego, estoppel, and third-party beneficiary.") (internal citations omitted); *Manganaro Corp. v. Jefferson at Penn Quarter, L.P.*, No. 04-2133, 2005 WL 3273979, at *3

(D.D.C. Aug. 9, 2005) (noting that it is "well-settled that an assignee of a contract stands in the shoes of the assignor and acquires the same rights and liabilities as if he had been an original party to the contract").

Nanko Shipping responds that the terms of the arbitration clause in the CBG Convention are clear and express: any third party, including assignees, must stipulate to the terms of the arbitration clause before that party can be required to arbitrate contract disputes. Nanko Shipping recognizes that Alcoa, a non-party to the CBG Convention, has stipulated to the arbitration clause, but insists that Nanko Shipping has not.[5]

Article 13 of the CBG Convention contains the relevant arbitration provision:

> Conciliation and arbitration shall apply not only to disputes between the Government and Harvey in the strictest sense but also to all disputes which in any way are connected with this Agreement and with any legal instruments and legal relationships which might be a consequence thereof and which might involve two or more of the following persons or corporate entities:
>
> > The Government, Harvey, the Corporation, stockholders of the Corporation, suppliers or contractors who might have a connection with the persons or corporate entities above listed, in relation, directly or indirectly, with the matters which are contemplated under this Agreement, and the heirs and assigns, public or private, of the above-mentioned persons or corporate entities.

---

[5] To the extent that Halco or Alcoa vaguely contends that the arbitration clause in the Technical Assistance Agreement served as a stipulation to the arbitration clause in the CBG Convention, the contention is without merit. The Technical Assistance Agreement contains an arbitration clause explicitly limited to disputes between the Republic of Guinea and Nanko Shipping regarding the Technical Assistance Agreement, but it does not extend beyond that agreement. *See* TAA at Art. 21 ("Any dispute arising out of the interpretation, the application, the performance of this agreement should be settled amicably. . . . In the case of a disagreement, the parties agree to submit it to 'The International Chamber of Commerce' in Paris. . . . Both parties are bound to accept such ruling.").

> The above persons or corporate entities, other than the Government, Harvey, and the Corporation, *shall stipulate their acceptance* of this conciliation and arbitration clause in order to be within its terms.

CBG Convention, Art. 13 at 38-39 (emphasis added). The Court reads the plain language of the CBG Convention and finds that its arbitration clause specifically mentions "assigns" as one type of party that "shall stipulate their acceptance" "in order to be within [the] terms" of the conciliation and arbitration clause. *Id*. at 39. There is no evidence to contradict or question the assertion of Nanko Shipping that, unlike Alcoa, it has never stipulated to an acceptance of the arbitration provision. Defendants may be right that the CBG Convention is unusual since assigns are normally bound to arbitration clauses in agreements from which they claim a benefit. *See Nat'l Union Fire Ins.*, 5 F.3d at 556. Under the CBG Convention, however, Nanko Shipping can seek to benefit from its alleged entitlement to a larger share of bauxite shipments from Guinea but is not thereby bound to arbitrate that dispute. Because Nanko Shipping is not subject to the arbitration provision of the CBG Convention, this case may proceed in federal court.[6]

### B. Has Nanko Shipping Failed to State a Claim?

#### 1. Count I: Breach of Contract Claim Against Halco

Halco argues that Nanko Shipping has not identified any contractual duty owed to it by Halco and that, even if Nanko Shipping could identify such a duty, the Third Amended Complaint does not sufficiently allege a breach. Nanko Shipping responds that Halco executed the CBG Convention and thereby agreed that Guinea retained the right to determine the shipper for up to 50% of its bauxite, *see* CBG Convention, Art. 9; Halco interfered with Nanko

---

[6] Defendants point out that this Court previously stated that if it had not dismissed the case for failure to join Guinea, it believed Nanko Shipping was required to arbitrate. *See Nanko Shipping I*, 107 F. Supp. 3d at 181-82. That statement was made without the benefit of full briefing on the issue of arbitrability and was mere *dicta*, not the law of the case.

10

Shipping's fulfillment of Guinea's 50% rights; and, therefore, Halco breached the implied covenant of good faith and fair dealing that is part of every contract. *See* TAC ¶¶ 19, 27-51. According to this argument, the implied duty of good faith and fair dealing required Halco to refrain from doing "anything which w[ould] have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Opp'n at 13 (quoting *Magee v. Am. Inst. Of Certified Pub. Accountants*, 245 F. Supp. 3d 106, 118 (D.D.C. 2017)). Halco replies that a signatory to a contract does not violate the implied duty of good faith and fair dealing "by failing to do something they had no obligation to do" under the contract. Halco Reply at 4 (quoting *Brown v. Sessoms*, 774 F.3d 1016, 1025 (D.C. Cir. 2014)).

To survive a motion to dismiss a plaintiff must allege facts sufficient to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. Under D.C. law,

> [i]n the case of a claim for breach of contract, the complaint must allege four necessary elements in order to effect fair notice: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach."

*Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 47 (D.D.C. 2010) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). The parties do not dispute that the CBG Convention is a valid contract between Guinea and Halco, that the Technical Assistance Agreement is a valid contract between Guinea and Nanko Shipping, and that the Technical Assistance Agreement assigned Guinea's rights under Article 9 of the CBG Convention to Nanko Shipping. The parties therefore do not dispute that because Nanko Shipping is an assignee of Guinea's rights under the CBG Convention, there is a valid contract between Nanko Shipping and Halco.

Nanko Shipping alleges that Halco, as a signatory to the CBG Convention, had a duty to act in good faith to ensure that Guinea, and by extension its assignee, Nanko Shipping,

11

received the benefits contemplated by Article 9 of the CBG Convention. *See* TAC ¶¶ 3, 19-20 (setting forth the text of Article 9 of the CBG Convention); *see also* CBG Convention, Art. 9 at 33-34. Further, the Third Amended Complaint alleges that the Corporation's Board, which executed the CBG Convention on the Corporation's behalf, has recognized Nanko Shipping's rights under Article 9. TAC ¶¶ 27, 75-78. Halco responds that Article 9 does not delineate a specific duty that binds Halco. To the contrary, it contends, the Corporation is the party whose duty it is to fulfill the obligations of Article 9. This argument raises questions on the merits which are premature and for which the current record is insufficient. On a motion to dismiss a court decides only if a complaint's allegations are plausible on their face; it does not decide the ultimate merits of those allegations. Accordingly, the Court finds Nanko Shipping has adequately alleged that Halco owes it a duty under the CBG Convention.

Halco further challenges the adequacy of the allegations of breach in the Third Amended Complaint. According to the complaint, despite Halco's knowledge of Nanko Shipping's rights under Article 9 of the CBG Convention, "HALCO Consortium members Alcoa, Rio Tinto, and DADCO steadfastly refused to honor Guinea's transfer of it[s] shipping rights to N[anko Shipping]." *Id*. ¶ 31 ("Defendants refused to honor and took affirmative steps to ensure that the TAA was not implemented."); *see also id*. ¶¶ 33-41, 79-81. Halco argues that none of these allegations is specific to Halco or provides facts to show how Halco, not Alcoa, breached the CBG Convention. It is true that the allegations in the Third Amended Complaint often group Halco and Alcoa and make general statements about actions taken by Alcoa with Halco's approval or ratification, *see, e.g.*, *id*. ¶¶ 24, 31, 34, 39-41, 65-67, but the Court finds that these allegations are sufficient to meet the plausibility standard of *Twombly*. After discovery, Nanko Shipping may not be able to support its allegations with evidence and Halco may

demonstrate that Alcoa acted independently; however, neither of those post-discovery possibilities renders the allegations facially implausible or insufficient to give notice to Defendants so they can prepare a defense.

Finally, the Court finds that Nanko Shipping has sufficiently alleged damages associated with the alleged breach, that is, its loss of profits from the shipment of the percentage of bauxite guaranteed to Guinea, with conditions, in Article 9 of the CBG Convention. *See id*. ¶ 81; *see also id*. at 30.

The Court will deny Halco's motion to dismiss Count I, which alleges a breach of contract by Halco.

   2.  *Count II: Race Discrimination (Sections 1981 & 1985) (All Defendants)*

Halco argues that the failure of the Third Amended Complaint to allege adequately a breach of contract also defeats its § 1981 and § 1985 claims because an underlying contractual right is necessary to make out a claim of racial discrimination tied to a breach or interference with a contract. Section 1981 "protects the right to make and enforce contracts free from racial discrimination." *Nanko Shipping II*, 850 F.3d at 467 (internal quotation omitted); *see also* 42 U.S.C. § 1981. Section 1985 permits a private cause of action for civil conspiracy related to violation of a federal right, in this case, the alleged conspiracy to violate § 1981. 42 U.S.C. § 1985(3) ("[I]n any case of conspiracy set forth in this section, if . . . another is injured in his person or property . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."); *see also Weaver v. Gross*, 605 F. Supp. 210, 213 n.5 (D.D.C. 1985) (citing *United Bhd. of Carpenters & Joiners*, 463 U.S. 825, 833 (1983)).

The D.C. Circuit has found that Nanko Shipping sufficiently plead a prima facie case of race discrimination by Alcoa under § 1981 when it alleged that Alcoa was "aware of Diane's race [and] treated the company he owns and operates less favorably than similarly situated white-owned companies." *Nanko Shipping II*, 850 F.3d at 467. Nanko Shipping similarly alleges that Halco was "fully aware of the background of Mr. Diane," TAC ¶ 53, "Halco ratified and affirmed the Alcoa Defendants' discriminatory conduct," *id*. ¶ 5, and Halco facilitated "shipping rights to similarly situated non-black shipping companies." *Id*. ¶ 24; *see also id*. ¶¶ 82-96. These allegations against Halco are substantially similar to those found sufficient with respect to Alcoa. They make out a prima facie case and will not be dismissed.

Nanko Shipping also alleges that Halco and Alcoa conspired together to violate § 1981 and thus violated § 1985. Nanko Shipping alleges that "Alcoa is a member of the HALCO Consortium of companies which effectively control and manage the CBG Bauxite mining operation at issue and corresponding shipping rights associated therewith," *id*. ¶ 11, and that Alcoa acted as directed by Halco. *Id*. ¶ 13; *see also id*. ¶¶ 34, 39, 40 (alleging Alcoa acted "with Halco's approval and ratification").

> A plaintiff suing under § 1985(3) must allege four elements: (1) a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of privileges and immunities under the law; (3) motivated by some class based, invidiously discriminatory animus exists; (4) whereby a person is either injured in his person or property, or is deprived of any right or privilege of a citizen of the United States.

*Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971) and *Hobson v. Wilson*, 737 F.2d 1, 14 (D.C. Cir. 1984)). To allege a conspiracy, the plaintiff must present factual allegations to provide plausible support that "defendants manifested the specific intent to agree to participate in a concerted effort to deprive someone of their civil rights based on a racially discriminatory motive." *Morgan v. District of*

14

*Columbia*, 550 F. Supp. 465, 470 (D.D.C. 1982) (citing *United States v. Bailey*, 444 U.S. 394, 405 (1980) and *Griffin*, 403 U.S. at 102 n.10). A plaintiff must "set forth more than just conclusory allegations of an agreement," *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004), and needs to provide a factual basis for events, conversations, or documents that indicate an agreement between defendants to violate his rights. *Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007) (citing *McCreary v. Heath*, No. 04-623, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005)); *see also Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) (finding that plaintiff must allege facts that "raise an inference that [defendants] were conspiratorially motivated"); *Barr v. Clinton*, 370 F.3d 1196, 1200 (D.C. Cir. 2004) ("Among other things, section 1985 plaintiffs must allege the elements of civil conspiracy, including: 'an agreement to take part in an unlawful action or a lawful action in an unlawful manner.'") (quoting *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002)).

The Third Amended Complaint posits its alleged § 1985 conspiracy on the fact of the business relationship between Halco and Alcoa, the Halco Consortium, and the actions by which Mr. Diane and his company were treated differently from competitors who are white. The allegations that Alcoa acted as an agent for Halco or as authorized by Halco are sufficient to indicate a plausible specific intent to agree. *See Morgan*, 550 F. Supp. at 470. The fact of a mutually beneficial business relationship between Halco and Alcoa is sufficient to "raise an inference" that the parties were motivated to agree together to restrict Nanko Shipping's business with the intent to receive a mutual benefit. *Atherton*, 567 F.3d at 688. The Court finds the allegations of conspiracy are more than just conclusory and more than "merely consistent with" a conspiracy. *Twombly*, 550 U.S. at 557. Therefore, the Court will deny Halco's motion to dismiss the §§ 1981 and 1985 claims.

### 3. Counts III & IV: Tortious Interference/Civil Conspiracy (All Defendants)

All Defendants move to dismiss Counts III and IV, which allege tortious interference with business/contractual relations and/or prospective advantage and civil conspiracy, arguing that this Court previously denied Nanko Shipping's motion to file a second amended complaint because such claims were legally futile. *See Nanko Shipping I*, 107 F. Supp. 3d at 182-83. That holding was not appealed. *See Nanko Shipping II*, 850 F.3d 461. The allegations of tortious interference in the Third Amended Complaint are substantially similar to those in the proposed Second Amended Complaint. *Compare* Second Am. Compl. (SAC) [Dkt. 14-1] ¶ 28 (alleging Defendants interfered with the TAA and Plaintiffs' business expectancy by their "refusal to dutifully provide Nanko shipping contract controls and awards as per the CBG [Convention]") *with* TAC ¶ 33. *Compare* SAC ¶ 61 (alleging Defendants "refused . . . to respect, implement, support, or ensure the effectuation of the TAA") *with* TAC ¶ 67 (alleging "Defendants jointly took active steps to impede Plaintiff's enjoyment and benefit of the TAA"). *Compare* SAC ¶¶ 92-104 (specific allegations for Counts III and IV—tortious interference with business/contractual relations and/or prospective advantage and civil conspiracy) *with* TAC ¶¶ 97-109 (specific allegations for Counts III and IV—tortious interference with business/contractual relations and/or prospective advantage and civil conspiracy).

The Court finds no reason to reconsider its previous holding that the tortious interference and civil conspiracy claims are futile and could not survive a motion to dismiss. Counts III and IV in the Third Amended Complaint are not dissimilar from the Second Amended Complaint and will be dismissed.

### IV. CONCLUSION

For the reasons stated above, the Alcoa Defendants' Motion to Dismiss [Dkt. 46] will be granted in part and denied in part and Halco's Motion to Dismiss [Dkt. 47] will be

granted in part and denied in part. Counts III and IV—tortious interference with business/contractual relations and/or prospective advantage and civil conspiracy, respectively—will be dismissed. Counts I and II—breach of contract by Halco and violations of 42 U.S.C. §§ 1981 and 1985—will not be dismissed. A memorializing Order accompanies this Memorandum Opinion.

Date: September 14, 2018

_____
ROSEMARY M. COLLYER
United States District Judge